**[Cite as *State v. Hamlett*, 2024-Ohio-679.]**

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 29923 |
| | : | |
| v. | : | Trial Court Case No. 2023 CR 00730 |
| | : | |
| JADEN LEE HAMLETT | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on February 23, 2024

. . . . . . . . . . .

CHRISTOPHER BAZELEY, Attorney for Appellant

MATHIAS H. HECK, JR., by NATHAN B. VANDERHORST, Attorney for Appellee

. . . . . . . . . . . .

EPLEY, P.J.

{¶ 1} Jaden Lee Hamlett was convicted after a bench trial of attempted abduction, a fourth-degree felony. Hamlett appeals from his conviction, claiming that the trial court committed plain error by making unnecessary comments and taking a sua sponte recess during his trial. For the following reasons, Hamlett's conviction will be affirmed.

## I. Facts and Procedural History

{¶ 2} According to the evidence at trial, during the evening of March 7, 2023, Hamlett went to a Chipotle restaurant near the University of Dayton. An employee, Jazzmin Mayes, was standing behind the service counter where customers would begin to place their orders. Hamlett initially approached the counter but walked away without ordering anything. He began pacing around the restaurant. Several minutes later, Hamlett went behind the counter without permission, walked over to Mayes, and pulled her arm. Hamlett told Mayes that he needed to talk to her and that she needed to come with him. As Hamlett started to pull "very hard," Mayes yelled, "Get off of me." Another employee, Mayes's sister, then pulled him away and told him to leave. Hamlett apologized and soon after left the restaurant. Mayes testified that she saw Hamlett attempt to reenter the store with a Door Dash delivery person, but he did not come in.

{¶ 3} The police were called, and they located Hamlett between Chipotle and the business next door. Officer Kenneth Webster testified that Hamlett was "highly intoxicated" but cooperative. Hamlett admitted that he had grabbed someone but said that he had been mistaken about who he was grabbing.

{¶ 4} Approximately three weeks later, Hamlett was indicted for attempt to commit abduction. He waived his right to a jury trial, and the matter proceeded to a bench trial on July 17, 2023. Mayes, her sister, and the responding police officer testified for the State. The State also played surveillance video from the restaurant and video footage from Officer Webster's body camera and cruiser. Hamlett testified on his own behalf. He admitted to grabbing Mayes but testified that he had been intoxicated and mistakenly

believed she was someone he knew.   Hamlett's aunt also testified for the defense.

{¶ 5} On August 28, 2023, in a written entry, the trial court found Hamlett guilty of attempt to commit abduction.   After a presentence investigation, the court sentenced him to up to five years of community control.   Hamlett appeals from his conviction, raising one assignment of error.

## II. Analysis

{¶ 6} Hamlett's sole assignment of error claims that "the trial court committed plain error by making unnecessary comments and taking a sua sponte recess to speak with a friend that impaired Hamlett's attorney's ability to represent their client."   Hamlett provides four examples of the trial court's alleged improper interference with his counsel's representation.

{¶ 7} Hamlett first objects to the court's reference to one of his attorneys as a "fast-talking lawyer."   This occurred when Mayes was asked to identify the person who grabbed her.   The prosecutor asked Mayes to indicate where that individual was seated and an article of clothing he was wearing.   Mayes replied, "A blue shirt, right next to you." The court then asked Mayes:

> THE COURT: This young man sitting right here?   You see this nice-looking lady in the – in the kind of cream-colored suit, the blonde-haired woman?
>
> MAYES: Yes, sir.
>
> THE COURT:   All right.   *She's a fast-talking lawyer, so that's who she is.* Are you identifying the young man that pulled your arm, grabbed your arm, as this gentleman sitting here in the Izod blue polo shirt?

MAYES:   Yes, sir.

THE COURT:   Okay.   Fair enough.   Go ahead, [prosecutor].

(Emphasis added.)   Trial Tr. at 16-17.

{¶ 8} Second, Hamlett argues that the trial court belittled defense counsel by admonishing her to use the "magic word" when making an objection and then criticized the objection she made.   Trial Tr. at 49-50.   The record shows that defense counsel said something "indiscernible" following Mayes's sister's answer to one of the prosecutor's questions.   The trial court then said,

THE COURT: Hold on a second. Okay. * * * So if you've got an objection –

DEFENSE COUNSEL: Uh-huh.

THE COURT: The magic word is "objection," okay?

DEFENSE COUNSEL: Uh-huh.

THE COURT: Then you tell me what it is.

DEFENSE COUNSEL: Uh-huh.

THE COURT: You got an objection?

DEFENSE COUNSEL: Yes.

THE COURT: What is it?

DEFENSE COUNSEL: Asked and answered.   He asked the question. She said no.

THE COURT: Asked and answered.   You know, that was one at the University of Texas that the great John Sutton (phonetic) told us is the most worthless objection in the history of world.   It is.   Overruled.   Now, you'll

have the chance in cross-examination.   Go ahead, [prosecutor].

{¶ 9} Third, Hamlett raises that the trial court interfered with defense counsel's cross-examination of Mayes by interrupting defense counsel to clarify her question about when Hamlett grabbed her arm.   The trial court told Mayes that defense counsel was

trying to get to the point in time where you first had any recognition, not that you were being unaware or anything else -- * * * you're going about your business.   But when did you first notice Mr. Hamlett and what was it that caused you to first notice Mr. Hamlett? Was it the grab of your arm?   Was it something he said?   Was it movement behind you?   What was it?   That's where she's going.

Trial Tr. at 35.   The trial court then told defense counsel to proceed with her questioning.

{¶ 10} Fourth, Hamlett asserts that the trial court indicated that it did not take his case seriously by calling for a recess to speak with a friend.   The record reflects that the trial court took notice of someone in the courtroom, Mr. Rickett, after defense counsel finished her questioning of Hamlett and before the prosecutor began his cross-examination.   After Hamlett finished testifying, defense counsel indicated that she wished to call Hamlett's aunt as the next witness.   The court replied, "All right.   Not now, you're not.   I'm going to talk to Mr. Rickett for a few minutes. * * * So we'll take a little recess."   Trial Tr. at 97.   When court resumed, the trial court explained:

I needed to see my old law partner.   Have a seat.   Mr. Rickett, who – who is one of the smartest guys I've ever known, University of Chicago law, and he's going to mediate a couple of cases for me that absolutely stink out loud.

And so he's going to save me the trouble of doing them myself.  All right.

So you want to call your next witness, [defense counsel]?

*Id*. at 98.  Defense counsel proceeded to call Hamlett's aunt to the stand.

{¶ 11} In his appellate brief, Hamlett asserts that the court's actions deprived him of his right to counsel and that, pursuant to *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 2044, 80 L.Ed.2d 657 (1984), a presumption of prejudice applies because no attorney, no matter how competent, could have provided effective assistance under the circumstances.  He states that the trial court's conduct during his trial undermined his confidence in his attorneys and prevented them from effectively representing him.  In support of this argument, Hamlett alleges violations of the Ohio Code of Judicial Conduct and Evid.R. 614(B), which allows a trial court to impartially interrogate witness.

{¶ 12} In its response, the State analyzes Hamlett's assignment of error as a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 692, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  Although we agree that defense counsel's effectiveness at trial is relevant to the merits of Hamlett's claim, the State's analysis recasts Hamlett's assignment of error and we decline to follow its approach.

{¶ 13} Hamlett did not object to the trial court's conduct, and he agrees that we must review his claim for plain error.  Plain error arises only when, "but for the error, the outcome of the trial clearly would have been otherwise."  *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph two of the syllabus; *State v. Smith*, 2d Dist. Montgomery No. 29597, 2023-Ohio-4565, ¶ 115.

{¶ 14} Contrary to Hamlett's contention, we find no plain error in the trial court's

handling of the trial.   At the outset, we emphasize that Hamlett chose a bench trial, not a jury trial.   Thus, any less-than-respectful comments by the trial court to or about defense counsel cannot be said to have deprived Hamlett of a fair trial by negatively influencing a jury against Hamlett or his attorneys.

{¶ 15} Accepting Hamlett's characterization of the trial court's behavior as belittling and demeaning to defense counsel, the record does not support the conclusion that the circumstances rose to the level that no attorney could competently represent Hamlett at trial.   Moreover, upon review of the trial transcript, we find no indication that Hamlett's attorneys actually were hindered, in any way, in representing Hamlett.   To the contrary, the record reflects that defense counsel fully and competently cross-examined the State's witnesses, presented Hamlett's case-in-chief, and made opening and closing arguments. There is no suggestion that the court's "fast-talking lawyer" comment, its handling of defense counsel's asked-and-answered objection, or its clarification of defense counsel's question to Mayes prevented defense counsel from putting the prosecution's case to a meaningful test, and Hamlett admits on appeal that he is not making such an argument. Assuming, further, that the court's comments negatively affected Hamlett's opinion of his attorneys (a matter which is not reflected in the record), nothing suggests that this caused defense counsel to no longer be able to effectively represent him.

{¶ 16} We also do not find the trial court's recess to talk to Mr. Rickett problematic. The trial court has control over all proceedings during a criminal trial.   R.C. 2945.03. This includes the discretion to determine when to take a recess during the trial. *See State v. Randle*, 2018-Ohio-207, 104 N.E.3d 202, ¶ 32 (3d Dist.) ("The trial judge had the

discretion to order a recess to ensure that the trial unfolded in an orderly process."); *State v. Lawrence*, 12th Dist. Butler No. CA2017-06-078, 2020-Ohio-855, ¶ 24. In this case, the trial court took a brief recess between witnesses to speak with a lawyer who was assisting the court with other cases. The trial court did not commit error, much less plain error, in doing so.

{¶ 17} Finally, we note that the Board of Commissioners on Grievances and Discipline of the Supreme Court of Ohio has exclusive jurisdiction over the alleged misconduct of judges. Gov.Bar.R. V(2)(A); *Barton v. Barton*, 2d Dist. Greene No. 2015-CA-53, 2016-Ohio-5264, ¶ 31. Thus, the proper method by which to raise complaints about a judicial officer's conduct is by a grievance filed before the Board of Commissioners on Grievances and Discipline, not by an appellate brief filed before this court. *See Barton* at ¶ 31.

{¶ 18} Hamlett's assignment of error is overruled.

### III. Conclusion

{¶ 19} The trial court's judgment will be affirmed.

. . . . . . . . . . . . .

WELBAUM, J. and HUFFMAN, J., concur.